U.S.C.A. - 7th Circuit

F I L E D

June 3, 2011     FP

GINO J. AGNELLO
CLERK

# Case No. __11-2257_____

# IN THE
# United States Court Of Appeals
## FOR THE SEVENTH CIRCUIT

---

## IN RE VPR INTERNATIONALE,

*Petitioner.*

---

## PETITION FOR A WRIT OF MANDAMUS

---

John Steele
STEELE HANSMEIER PLLC
161 N. Clark St., Suite 4700
Chicago, IL 60601
(312) 880-9160
jlsteele@wefightpiracy.com

Nadia Wood
500 Laurel Ave.,
St. Paul, MN 55113
(612) 568-5298
law@nadiawood.com

*Attorneys for Petitioner*

June 3, 2011

Petitioner VPR Internationale seeks a writ of mandamus, pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure, to set aside the March 9, 2011 Order (the "March 9 Order," attached as Exhibit A) of the Honorable Harold A. Baker, United States District Court for the Central District of Illinois (the "District Court"), in *VPR Internationale v. Does 1–1,017*, No. 11-cv-2068, denying Petitioner's motion for *ex parte* discovery.

## PRELIMINARY STATEMENT

Petitioner owns copyrighted works that are being illegally reproduced and distributed over the Internet by the Defendants. Defendants are known to Petitioner only by their IP addresses, which are unique numbers assigned to networked devices like computers. With narrowly tailored discovery from Internet Service Providers, Petitioner would be able to identify the account holders associated with the IP addresses over which infringing activity was observed. From there, Petitioner would be able to ascertain the identities of the actual infringers. Without such discovery, Petitioner can advance its case no further and is stuck in a legal limbo from which there is no appeal.

In its March 9 Order, the District Court denied Petitioner leave to take discovery to ascertain contact information for the account holders associated with the IP addresses over which infringing activity was observed. The District Court abused its discretion in denying discovery because it ignored this Court's binding precedent, refused to apply proper legal analysis, and forced the Petitioner into a cul-de-sac from which there is no appeal. Thus, although

extraordinary, a writ of mandamus vacating the District Court's order is the only remedy that can cure this clear abuse of discretion.

## STATEMENT OF ISSUE PRESENTED AND RELIEF SOUGHT

The sole issue presented by this petition is:

> Defendants' identities are unknown to Plaintiff. Instead, each Defendant is associated with an Internet Protocol (IP) address. Internet Service Providers (ISPs) know the contact information for the account holder associated with each IP address. Did the District Court abuse its discretion when it denied Plaintiff's request to discover contact information by serving ISPs with subpoenas *duces tecum* under Fed. R. Civ. P. 45?

Petitioner respectfully submits that the above question must be answered in the affirmative and a writ of mandamus should issue, vacating the March 9 Order, and directing the District Court to permit Petitioner to serve subpoenas on ISPs.

## STATEMENT OF FACTS

This petition arises from a copyright infringement claim brought against a putative class of anonymous Defendants who illegally reproduced and distributed Petitioner's copyrighted works over the Internet. (Compl., Mar. 29, 2010, ECF. No. 1, attached as Exhibit C.) Petitioner is a producer of copyrighted adult entertainment videos which were distributed by Defendants without permission via the BitTorrent file sharing protocol. (*Id.* ¶¶ 1–3.) Defendants' actual names are unknown. (*Id.* ¶ 4.) Instead, each Defendant is identified only by an Internet Protocol ("IP") address—a number assigned to devices connected to the Internet. (*Id.*) Petitioner moved the District Court for leave to serve Rule 45 subpoenas on the Internet Service Providers ("ISPs") to

discover limited contact information.  (Plaintiff's *Ex Parte* Motion for Leave to Take Expedited Discovery, Mar. 8, 2011, ECF No. 6;  *see also* Memorandum of Law in Support of Plaintiff's *Ex Parte* Motion for Leave to Take Expedited Discovery, Mar. 8, 2011, ECF No. 7, and Proposed Order, Mar. 8, ECF No. 8, both attached as Exhibit D.)  If presented with a Defendant's IP address and the date and time of the infringing activity, an ISP could identify the name and address of a Defendant (i.e., the ISP's subscriber) because that information is contained in the ISP's subscriber activity log files.  (Ex. D at 2.)

After taking one day to consider Petitioner's Complaint and Motion, the District Court denied Petitioner leave to take this limited discovery in its March 9, 2011 Order.  (Ex. A.)  Petitioner moved the District Court to reconsider its decision.  (Plaintiff's *Ex Parte* Motion for Reconsideration of the Order Denying Expedited Discovery, Mar. 11, 2011, ECF No. 13.)  On March 22, the District Court denied the motion with a single sentence docket order: "The Motion for Reconsideration [13] is denied."

Petitioner then moved the District Court to certify its March 9 Order for interlocutory review under 28 U.S.C. § 1292(b).  (Plaintiff's Motion to Certify the Court's March 9, 2011 Order for Interlocutory Review, April 11, 2011, ECF No. 14.)  The District Court denied that relief as well.  (Order, Apr. 29, 2011, ECF No. 15, attached as Exhibit B.) [hereinafter "April 29 Order"]

Having exhausted all opportunities for relief at the trial court level, Petitioner now seeks relief from this Court.

## STATEMENT OF JURISDICTION

Jurisdiction in the District Court is based on 17 U.S.C. §§ 101, et seq., (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights).  Jurisdiction in this Court is invoked under 28 U.S.C. § 1651, because this Court would have jurisdiction in an appeal over a final judgment in this action under 28 U.S.C. § 1291.

## REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus may issue if a challenged district court order is (1) effectively unreviewable at the end of the case, (2) inflicts irreparable harm, and (3) "so far exceed[s] the proper bounds of judicial discretion as to be legitimately considered usurpative in character, or in violation of a clear and indisputable legal right, or, at the very least, patently erroneous."  *In re Ford Motor Co., Bridgestone/Firestone North American Tire, LLC*, 344 F.3d 648, 651 (7th Cir. 2003) (quoting *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995)).  Over three decades ago, the Supreme Court held that where a matter is committed to sound discretion of a district court, as discovery matters are, "it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'"  *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665 (1978).  Nevertheless, in its most recent decision on this point, the Supreme Court has deemed the writ of mandamus "an established mechanism" for an appellate review in the context of a discovery order.  *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 608 (2009).

4

Consistent with the Supreme Court's precedent in *Mohawk*, this Court held that even with respect to discretionary decisions, mandamus is a proper remedy if the trial judge commits a "clear abuse of discretion" or a "patent error." *In re Ford Motor Co.,* 344 F.3d at 651 (citing *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953); *Rorer*, 51 F.3d at 1295). This Court has also recognized that extraordinary cases require extraordinary remedies, thus issuing a writ of mandamus compelling a district court to vacate its discovery order. *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 983 (7th Cir. 2002).

This Court has not had the opportunity to consider a case under these particular circumstances, where a plaintiff has been denied all opportunity for relief by a district court's refusal to grant discovery of unknown defendants— discovery that is also necessary for Petitioner's pursuit of class certification. Other circuits have concluded, however, that this is exactly the kind of "clear abuse of discretion" that requires a writ of mandamus to correct, because it places a plaintiff's case in a limbo never contemplated by the Federal Rules of Procedure and from which there is no appeal. *Investment Properties Int'l, Ltd. v. IOS, Ltd.*, 459 F.2d 705, 707–08 (2d Cir. 1972) (issuing mandamus directing a district judge to vacate an order vacating notices of deposition which made it virtually impossible for plaintiffs in antitrust action to discover facts on which jurisdiction and standing turned); *accord Western Electric Co v. Stern*, 544 F.2d 1196, 1198–99 (3rd Cir. 1976) (holding that the district court's refusal to grant

5

any discovery was clearly in excess of its powers under the Federal Rules of Civil Procedure, and thus warranted correction under the All Writs Act).

This case falls into the same category. In Part I below, Petitioner demonstrates that the District Court abused its discretion by denying Petitioner leave to take limited discovery because the District Court failed to apply any legal analysis. In Part II, Petitioner shows that this abuse of discretion can only be remedied through the issuance of a writ of mandamus by this Court, as other remedies are not available and Petitioner will suffer irreparable harm.

## I.    Petitioner Has a Clear and Undisputable Right to Relief Because the District Court Abused Its Discretion by Denying Discovery Without Applying Proper Legal Analysis

Petitioner sought leave to initiate discovery prior to the Rule 26(f) conference because there were no known Defendants with whom Petitioner could confer. (*See generally* Ex. D.) In its motion for *ex parte* discovery, Petitioner argued that the court's leave to serve ISPs with Rule 45 subpoenas is proper for three independent reasons. (Ex. D at 3.) First, Petitioner met the common law standard applied by courts in this Circuit when assessing whether to grant *ex parte* relief—an inquiry that is grounded in considerations of need and fairness. (*Id.* at 3–6.) Second, where, as here, a party is ignorant of the defendants' true identities, it is the duty of the trial court to aid the party in discovering that information. (*Id.* at 7–8.) Third, this discovery was necessary for eventual class certification. (*Id.* at 8–12.) The District Court did

not address any of these three grounds when it denied Petitioner's motion. (March 9 Order.)

The District Court denied Petitioner's motion—Petitioner's sole avenue for relief—without conducting any legal analysis and thus abused its discretion. This Circuit long ago established that mandamus relief is appropriate in circumstances when the challenged order is "so plainly wrong as to indicate failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine." *Comfort Equipment Co v. Steckler*, 212 F.2d 371, 373 (7th Cir. 1954) (citing and discussing with approval *American Airlines, Inc. v. Forman*, 204 F.2d 230, 232 (3d Cir. 1953)). The District Court did not rely on any settled common law doctrine in its opinion; in fact, the March 9 Order contained no case citations, and the discussion contained therein (e.g., an insistence on naming the ISPs in the lawsuit) was flatly inconsistent with binding precedent and federal statutes. The Order placed Petitioner's case in a legal limbo from which there is no appeal. This Court should issue a mandamus vacating the Order and directing the District Court to permit Petitioner to serve the subpoenas on the ISPs.

**A.    Petitioner Has Made the Necessary Showing for Expedited Discovery**

First, Petitioner has demonstrated that its request meets the "considerations of need and fairness" common law standard which is applied by the district courts in this Circuit in analyzing *ex parte* discovery requests. *See, e.g.*, *Lamar v. Hammel*, No. 08-02-MJR-CJP, 2008 WL 370697, at *3 (S.D. Ill. Feb. 11, 2008); *see also IRC, LP v. McLean*, No. 09-189-JPG-CJP, 2009 WL

7

839043, at *2 (S.D. Ill Mar. 31, 2009) ("[T]he party who seeks [expedited] discovery must first demonstrate that there is a need for such discovery.") (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)).  Petitioner, as with any plaintiff, has a fundamental need to discover Defendants' identities because no suit can proceed beyond the filing of a complaint without such rudimentary information.  Petitioner's need for the information is heightened because evidence of infringement will be destroyed with the passage of time and because infringement of its works is ongoing and continuous.  (For an in-depth discussion of these issues, see Petitioner's Motion for *Ex Parte* Discovery attached as Exhibit D, at 4–6.)  Petitioner's request is reasonable because it is limited to the account holders' basic contact information and because without this information Petitioner literally has no means to enforce its rights as a copyright holder.  (*Id.* at 6.)  The account holders will be given notice and an opportunity to appear and object to the disclosure of their information.  (*Id.*)  Further, *ex parte* relief is appropriate where, as here, there are no known defendants with whom Petitioner may confer.  (*Id.* at 7–8.)

Second, as this Court has articulated in the past, it is the duty of a trial court to assist plaintiffs in discovering the identities of unknown defendants.  It is an abuse of discretion to deny this discovery.  *See, e.g.*, *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (approving of fictitious name pleadings until such time as the identity of the plaintiffs "can be learned through discovery or through the aid of the trial court").  The trial court in *Maclin* dismissed Doe

defendants, even though the identities of these defendants could have been easily ascertained. *Id.* This Court reversed, holding that "when, as here, a party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery." *Id.* And *Maclin* is only one of many cases in the line of Seventh Circuit decisions holding that "[t]o the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996); *see also id.* at 555 n.3 (collecting cases). Here, Petitioner needs leave to serve ISPs with Rule 45 subpoenas prior to the Rule 26(f) conference because each Defendant is currently known only by an IP address. Through proper discovery, however, Petitioner can determine the actual identities of the Defendants.

Third, this Court has held that trial courts must allow a degree of pre-certification discovery to aid making the necessary class determinations. *See, e.g.*, *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 904 (7th Cir. 1981). In *Eggleston*, the discovery at issue involved thousands of intrusive questions asked in interrogatories and during the depositions, and obstructionist tactics employed by the other side. *Id.* at 893–94, 896–902. The trial judge dismissed plaintiff's claims with prejudice for their "evasive and thwarting conduct." *Id.* at 902. Although sympathizing with the judge for having to endure a "vexatious" case, this Court nonetheless held that it was "an abuse of discretion to have tried to cure abuse on both sides by

9

denying plaintiffs all opportunity for relief," and reversed the trial court.  *Id.* at 904.

The District Court in its March 9 Order did precisely that—denied Petitioner all opportunity for relief, in plain disregard of the law.

**B.     District Court's Denial of Discovery Was a Clear Abuse of Discretion**

The District Court's March 9 Order is a clear abuse of discretion for two reasons.  First, the District Court failed to apply proper legal analysis and follow a settled common law doctrine.  The District Court had three legal standards to analyze, but none of the three were even mentioned in the Order.  Second, the Order denied discovery and thus denied Petitioner all opportunity for relief.  Because the Order placed petitioner's case in limbo from which there is no possible path forward, this is a case where the issuance of a mandamus is appropriate to cure the clear abuse of discretion.

**1.  The District Court Did Not Apply a Proper Legal Analysis**

The first reason why the District Court abused its discretion is because its March 9 Order "indicate[s] failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine." *Steckler*, 212 F.2d at 373 (*quoting Forman*, 204 F.2d at 233).  In *Steckler*, this Court discussed the circumstances under which it would be appropriate to issue an extraordinary writ.  The Court considered whether the district court took "hasty, peremptory or arbitrary action," 212 F.2d at 373, or whether the district court analyzed the facts before it "in relation to the legal rationalization." *Id.* (*quoting Forman*, 204 F.2d at 233).  During this analysis,

"[t]he language, structure and legislative history of statutes must be examined. Relevant judge made doctrine must be considered. The interplay of these factors must be rationalized." *Id.* (*quoting* Forman, 204 F.2d at 233). The Eighth Circuit has also established several factors for what may constitute a clear abuse of discretion justifying the issuance of a writ of mandamus: a decision made in reliance on obviously erroneous legal conclusions, a clear failure to consider relevant factors, or a clear failure to apply proper legal standards. *In re Beiter Co.*, 16 F.3d 929, 933 n.4 (8th Cir. 1994).

Here, the District Court failed to apply the relevant legal standard of "need and fairness" followed by other district courts when deciding whether to grant ex parte discovery. It also failed to follow settled common law doctrine directing trial courts to assist plaintiffs in identifying unknown defendants and allow discovery of information necessary for class certification.

Instead, the District Court insisted that the discovery be "conducted in an adversarial procedure." (March 9 Order, para. 2.) Yet the District Court denied the Petitioner its only plausible opportunity to initiate that "adversarial procedure." The District Court suggested that "there are existing, identified entities who could be named as defendants that have control over or know the identity of a particular internet service address customer." (*Id.* at para. 3.) Assuming that the Court was referring to the Internet Service Providers (ISPs) as the "identified entities who could be named as defendants," Petitioner cannot initiate an adversarial proceeding in this manner. In addition, due to

11

short data retention policies by the ISPs, the threat of data destruction is immediate.

Petitioner does not have a cause of action against the ISPs because ISPs are generally immune from liability for copyright infringement committed by their subscribers. Over a decade ago, in response to the increased availability of illegal file-sharing methods on the web and the unprecedented legal issues associated with the litigation resulting from such methods, Congress enacted the Digital Millennium Copyright Act (DMCA), Pub. L. No. 105-304, 112 Stat. 2860 (1998) (codified as amended in scattered sections of 17 and 28 U.S.C.). Title II of the DMCA, the Online Copyright Infringement Liability Limitation Act, addresses the liability of ISPs for copyright infringement. 112 Stat. 2877 (codified as amended at 17 U.S.C. § 512 (2000)). By acting in accordance with certain prerequisites established under the DMCA, an ISP will avoid liability for monetary damages for various copyright infringement claims. *Id.* ISP compliance with the Act further limits equitable and injunctive relief. *Id.* § 512(j). Petitioner cannot in good faith argue that ISPs are liable for the unlawful acts of their subscribers in the face of federal laws that shield ISPs from liability. In addition, this is a class action case where the proposed class members are copyright infringers who engaged in a civil conspiracy by acting in concert when sharing files. (Ex. C, Compl. ¶¶ 31–36, 39, 40.) The ISPs have not committed copyright infringement, have not engaged in a civil conspiracy, do not share common questions of law or fact with the Defendants, and their

interests neither coincide with nor would be adequately represented by the class representatives.

The Court also concluded that it has "no basis to believe that information will be lost or evidence destroyed that would justify expedited discovery that is not conducted in an adversarial procedure." (March 9 Order, para. 2.)  Not only is Petitioner unable to initiate the adversarial process by naming the ISPs in this suit, but it has every reason to believe that the evidence is being destroyed even as it seeks this writ.  The IP addresses by which the Defendants are identified in this suit are not fixed indefinitely.  In its motion for reconsideration, Petitioner analogized IP addresses to records of *who* rented *which* car at a busy car rental agency.  IP addresses are like cars "leased" by subscribers.  If a plaintiff was injured by a rental car, the plaintiff can discover the information on who leased the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred.  Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car.

As with rental car license plates, Petitioner can trace the IP addresses to who "owns" them—ISPs like Charter Communications, Time Warner, Cox, etc.—but it does not have a way of identifying the "driver," the subscriber who caused the injury.  Petitioner knows exactly when the injury occurred, and has assembled that information in Exhibit A attached to the Complaint.  Petitioner needs to learn who was using the IP address in question on the date and time specified in the Exhibit, not who is using it now.  And unlike car rental

agencies, ISPs do not maintain their records for very long, but instead destroy them quickly, usually in the matter of weeks or months.[1]  Because it takes time to assemble the information on infringing IP addresses, to bring a lawsuit, and then to wait for ISPs to process subpoena requests, with every passing day the information on who was using the IP at the time of the injury is in danger of destruction.

Although the District Court ignored Petitioner's analogy when it denied the motion for reconsideration in a one sentence docket entry, it did return to it in its April 29 Order denying Petitioner's motion to certify the discovery question for interlocutory review.  (Ex. B at 2.)  In an order similarly void of application of binding precedent, the District Court concluded that the comparison is not apt because "the rental agency owns the car and is a potential defendant, so the adversarial process would yield the driver's information.  And such information is not necessarily confidential; accident reports and police records may also identify the driver."  (*Id.*)  But the District Court did not explain how availability of other options in a hypothetical

---

[1] No national standard on data retention by ISPs exists, although it is being contemplated by Congress.  *Data Retention as a Tool for Investigating Internet Child Pornography And Other Internet Crimes: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 112th Cong. 5 (Jan. 25, 2011) [hereinafter *Hearings*] (statement of Lamar Smith, Chairman, H. Comm. on the Judiciary), *available at* http://judiciary.house.gov/hearings/printers/ 112th/112-3_63873.PDF (last visited May 14, 2011).  ISPs have varying data retention policies for IP addresses.  For example, Time Warner and Cox will erase their records after 6 months, Earthlink after 4 months, and many smaller ISPs in days or weeks.  *See Hearings*, supra, at 65 (statement of Wasserman Schultz, Member, H. Subcom. on Crime, Terrorism, and Homeland Security); Time Warner Subpoena Instructions, http://www.timewarnercable.com/corporate/subpoenacompliance.html; Earthlink Civil Subpoena Policy, http://www.earthlink.net/about/policies/civil.faces; Notice to Parties Serving Subpoenas on Cox Communications, http://www.cox.com/policy/ leainformation/LEAInformation_print.pdf (all three last visited May 14, 2011).

scenario resolves Petitioner's problem where subpoenaing the ISPs the only way for Petitioner to identify any defendants.

In its April 29 Order the District Court suggested that the reason why it is denying Petitioner's discovery request is because the account holder may not necessarily be the infringer. (*Id.* at 2.) But Petitioner is not arguing that all account holders are Defendants. The proposed class definition references both the IP addresses and defendant's conduct—that is, "distribution activity via BitTorrent protocol"—an activity that would be within the personal knowledge of each potential class member. If the account holder did not engage in distributing the videos, they are not a defendant. The identity of each individual class member does not need to be known, because Petitioner will not be seeking a determination of ultimate liability and an award of damages against each individual Defendant in this proceeding. Instead, Petitioner is seeking resolution of issues common to every member of the class. Petitioner will then pursue individual proceedings against class members during which individual defendants will be able to assert individual defenses such as that they are not a member of the class, and damages, if any, will be awarded.

However, Petitioner still needs to discover the identities of the account holders to both identify a group of potential class representatives and to provide notice to putative class members who are not the account holders. Petitioner expects to name a small group of defendants and conduct digital forensic discovery in an adversarial, not *ex parte*, setting to determine whether they engaged in distribution activity and can serve as class representatives.

15

With respect to the other putative class members, due process does not require perfect notice, it merely requires a notice "reasonably calculated" to reach the person affected by the proceeding. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23 does not require perfect notice either, but merely "best practicable" notice. Fed. R. Civ. P. 23(c)(2)(B). Notice sent to the account holder's household is both "reasonably calculated to reach" the defendant and "best practicable" under the circumstances. Because the person who downloaded the videos was using the account holder's connection, it is reasonable to infer that they are members of the same household and that the identity of the person most likely to download the videos will be known to the account holder.

Petitioner can properly brief how it intends to maintain this suit as a class action in greater detail. But it was never given that opportunity by the District Court. Instead, in its March 9 Order the District Court called this suit "a perversion of the purpose and intent of Fed. R. Civ. P. 23" despite the fact that defendant class actions are expressly authorized by the plain language of Rule 23, as well as being grounded in a common law tradition respected by this Circuit and dating back to medieval England. *See, e.g.,Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc.*, 97 F.R.D. 668 (N.D. Ill. 1983) (certifying a defendant class in an antitrust case); *Research Group v. Pfister Associated Growers, Inc.*, 301 F. Supp. 497 (N.D. Ill. 1969) (certifying a defendant class in a patent infringement action), *appeal dismissed sub nom. Research Corp. v. Asgrow Seed Co.*, 425 F.2d 1059 (7th Cir. 1970);

16

*Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 285 F. Supp. 714 (N.D. Ill. 1968) (same); *see also* Stephen C. Yeazell, *The Past and Future of Defendant and Settlement Classes in Collective Litigation*, 39 Ariz. L. Rev. 687, 687–90 (Summer 1997) (discussing history and origins of defendant class actions).

In its April 29 Order the District Court speculates that "expedited discovery could be used to wrest quick settlements." (Ex. B at 3.) The District Court does not explain how this pressure would be any different if Petitioner was somehow able to discover Defendants' identities through the District Court's conception of an "adversarial process." And even in the class action setting, this Court emphasized that it did "not want to be misunderstood as saying that class actions are bad because they place pressure on defendants to settle. That pressure is a reality, but it must be balanced against the undoubted benefits of the class action that have made it an authorized procedure for employment by federal courts." *Rorer*, 51 F.3d at 1299. The District Court did not engage in a balancing test, either.

Further, although the District Court's denial of discovery could be explained by its general distaste towards the defendant class action device, the language of the Order does not distinguish between discovery in the class context and discovery in the context of individual suits. Even if Petitioner were to bring 1,017 individual cases against the respective Defendants, applying the District Court's logic, Petitioner would still be denied discovery because it

17

would not be able to initiate *ex parte* discovery from a third party in an absence of a so-called "adversarial procedure."

In summary, the District Court did not engage in a legal analysis and refused to be guided by controlling precedent. Instead, it created a paradox by demanding an adversarial process while foreclosing the only avenue to the same, forcing Petitioner into a cul-de-sac. This paradox is precisely the reason why mandamus should issue vacating the District Court's order—because by denying discovery, the District Court also denied Petitioner all opportunities for relief.

## 2.  By Denying Discovery, the District Court Inappropriately Denied All Relief

The second reason why the District Court abused its discretion is because its March 9 Order restricted all discovery and placed Petitioner's case in a perpetual limbo. In *Investment Properties Int'l*, the Second Circuit Court of Appeals held that where a district court order had vacated depositions notices and thus made it virtually impossible for plaintiffs to discover facts on which jurisdiction and standing turned, mandamus would be warranted. 459 F.2d at 708. The court of appeals directed the lower court to vacate its order and to allow such limited discovery to take place. *Id.* The Second Circuit emphasized that discovery in this case was "not a matter of mere 'housekeeping'" but lay at "the heart of the controversy, for on it turn[ed] plaintiffs-petitioners' right to be in court." *Id.* at 707. Indeed, the order at issue in *Investment Properties Int'l* placed petitioners "in a cul-de-sac which the Federal Rules never contemplated . . . [the] order—which limit[ed] all further discovery, not just

depositions, until jurisdiction is established—place[d] plaintiffs-petitioners' case in limbo, from which there is no appeal." *Id.* at 707–08.  The court of appeals pointed out that the trial court's order created a catch-22: "To move forward at all with the case, plaintiffs-petitioners must prove jurisdictional facts at trial; to accomplish that, however, discovery may well be needed." *Id.* at 708.

The Third Circuit Court of Appeals similarly issued a writ of mandamus when a district court denied the petitioner's request to serve interrogatories on a named class representative.  *Stern*, 544 F.2d at 1198–99.  The court concluded that the "district court's refusal to grant [defendant] any discovery of plaintiff's assertions as to the nature of [defendant's] discrimination against individual members of the class was clearly in excess of its powers under the Federal Rules of Civil Procedure, and thus warrants correction under the All Writs Act."  *Id.*  Accordingly, in both *Investment Properties Int'l* and *Stern*, the courts of appeal recognized that the trial courts at issue had the power to do what they did.  *Id.* at 1198; *Investment Properties Int'l*, 459 F.2d at 707.  Both courts finally concluded, however, that cutting off discovery in this manner was a clear abuse of discretion that warranted relief under the All Writs Act.

This Court should follow suit.  Notwithstanding the District Court's insistence, Petitioner cannot initiate an adversarial process without completing the basic step of learning who its adversaries are.  Without the identity of its adversaries, Petitioner cannot name individuals to its suit, serve summons, meet and confer, or otherwise advance its case beyond the filing of its

complaint. Like the plaintiffs in *Investment Properties Int'l* and *Stern*, Petitioner cannot move forward without narrowly tailored initial discovery.

Although appellate courts are traditionally chary about granting extraordinary writs, the circumstances of this case make a writ of mandamus the only correct option for curing the District's Court clear abuse of discretion.

## II. This Court Should Issue a Writ of Mandamus to Remedy the District Court's Clear Abuse of Discretion

Part of the consistently articulated standard for deciding whether to issue a writ of mandamus is that "petitioner must show irreparable harm (or, what amounts to the same thing, the lack of an adequate remedy by way of direct appeal or otherwise)." *Matter of Sandahl*, 980 F.2d 1118, 1119 (7th Cir. 1992). In this case, Petitioner can demonstrate both.

The District Court's abuse of discretion, if not remedied through the issuance of a writ of mandamus by this Court, will leave unreviewed the March 9 Order denying discovery that placed Petitioner's case in limbo. Without discovery, Petitioner cannot move forward and there will never be a final, appealable order. Thus, issuing a mandamus in this case is not contrary to the policy against piecemeal appeals. Petitioner will also suffer irreparable harm because without discovery, it will lose its ability to enforce its rights as a copyright holder and remedy economic losses stemming from unlawful distribution of its works. For these reasons, a writ of mandamus should issue to correct the District Court's abuse of discretion.

## A.     Petitioner Has No Other Available Remedies

Petitioner has no adequate remedy by way of a direct appeal since discovery rulings are usually not appealable, as the disadvantaged party has a remedy at the end of the district court proceedings. *Chandler*, 277 F.3d at 981. But without discovery, there will never be a final, appealable order in this case. Without discovery, Petitioner will not be able to serve Defendants within the 120 days required by the Rules of Civil Procedure and the case will be dismissed without prejudice. Fed. R. Civ. P. 4(m). A dismissal without prejudice nominally is not final, and thus cannot be appealed. *Lee v. Cook County*, 635 F.3d 969, 972 (7th Cir. 2011).

Petitioner also has exhausted other available remedies: the District Court refused to reconsider its holding and also refused to certify under 28 U.S.C. § 1292(b) that the question presented by the *ex parte* motion would be appropriate for consideration by this Court in an interlocutory appeal.

## B.     Petitioner Will Suffer Irreparable Harm

Without discovery, Petitioner will continue to suffer ongoing economic losses from unlawful distribution of its copyrighted works. The most obvious consequence is that Petitioner will not be able to enforce its rights against a thousand Defendants in this case. But the language of the March 9 Order applies to every case in which a defendant is unknown, whether sued individually or joined as a group or as a class. In essence, the March 9 Order holds that any owner of any copyrighted work distributed on the Internet will

never be able to discover an infringer's identity by obtaining information from an ISP, even though this is the only way to identify the alleged infringer.

Finally, if the District Court order is left standing, it will not only continue to serve, at the very least, as a persuasive authority in this Circuit, but it will also become an encouragement and a blessing to copyright infringers everywhere.   The March 9 Order denying discovery and April 29 Order denying certification already have been applauded by various sites dedicated to technology news such as Slashdot and TechDirt.   *See, e.g.*, Slashdot, An IP Address Does Not Point To a Person, Judge Rules, May 3, 2011, http://slashdot.org/ story/11/05/03/2020205/An-IP-Address-Does-Not-Point-To-a-Person-Judge-Rules; Tech Dirt, Judge Slams Copyright Troll Lawyer John Steele's Latest "Fishing Expedition," Apr. 30, 2011, http://www.techdirt.com/articles/ 20110430/00274114096/judge-slams-copyright-troll-lawyer-john-steeles-latest-fishing-expedition.shtml.   Without appellate review of the District Court's order, infringement will not only continue unfettered, but it will presumably increase as people realize that copyright holders are powerless to enforce their rights against infringers.

## CONCLUSION

Although "writs of mandamus concerning discovery issues are as rare as hen's teeth," *Matter of Orthopedic Bone Screw Products Liability Litigation*, 79 F.3d 46, 48 (7th Cir. 1996), the Supreme Court has made clear that the standard governing the availability of mandamus is not "never," but "hardly ever." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  In this

case, a writ of mandamus is Petitioner's only means of obtaining relief: this case is stuck in limbo and without this Court's writ, Petitioner will suffer irreparable harm.   The March 9 Order was a clear abuse of discretion by the District Court because it failed to apply any legal analysis, did not follow this Court's precedent, and denied Petitioner all relief.   General distaste for the class-action device or the subject matter of this suit should not be the reason to refuse the limited discovery necessary to enforce legal rights.   This Court should issue a writ of mandamus vacating the March 9 Order, because even though it is extraordinary, it is both the right and only proper remedy in this case.

[intentionally left blank]

**ORDER OF THE COURT BELOW**

Attached as Exhibit A is a true and correct copy of the March 9, 2011

order of the United States District Court for the Central District of Illinois.  Also

attached as exhibits:

Exhibit B: April 29 Order Denying motion to certify a question for

interlocutory review;

Exhibit C: Complaint;

Exhibit D: Motion for Ex Parte Discovery and Proposed Order;

Exhibit E: Certified Copy of the District Court's Docket.


Respectfully submitted,

VPR Internationale

DATED: June 3, 2011

By:     s/ John Steele

John Steele # 6292158
Steele Hansmeier PLLC
161 N. Clark St.
Suite 4700
Chicago, IL 60601
312-880-9160; Fax 312-893-5677
jlsteele@wefightpiracy.com
*Lead Counsel*

Nadia Wood
500 Laurel Ave.,
St. Paul, MN 55113
(612) 568-5298
law@nadiawood.com

**Attorneys for Petitioner**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a true and correct copy of the foregoing Petition for a Writ of Mandamus to be provided to the Honorable Harold A. Baker, United States District Judge, by First Class United States mail, sufficient postage prepaid, on this 3rd day of June, 2011.  There are no identified Respondents in this case that may be served with a copy of this Petition.

s/ John Steele_____

Attorney for Petitioner

# EXHIBIT A

UNITED  STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

VPR  INTERNATIONALE,[1]

          PLAINTIFF,

     vs.                        11-2068

DOES 1-1017,
individually and as representatives
of a class,

          DEFENDANTS.

<u>ORDER ON MOTION FOR EXPEDITED DISCOVERY</u>

     In this novel case, which has turned Fed. R. Civ. P. 23 on its head, an identified existing entity, acting as a plaintiff, seeks to sue a class of unnamed individuals, denominated only as Does 1 through 1017.  There has been no service of process yet because, obviously, there is no identified  "person" to serve within the meaning of Fed. R. Civ. P. 4.  So at this point the court has no personal jurisdiction over anyone.  The Does, perhaps, are subscribers who have an internet service address.  All that identifies the Does are multi-digit internet subscriber addresses.

     There is nothing to lead the court to believe that expedited discovery is necessary in the case.  There is no basis to believe that information will be lost or evidence destroyed that would justify expedited discovery that is not conducted in an adversarial procedure.

     Certainly there are existing, identified entities who could be named as defendants that have control over or know the identity of a particular internet service address customer.  Their being named in the suit would give the court an entity upon whom process could possibly be served and provide personal jurisdiction over identified parties to the suit.  The identified, existing defendant over whom the court had personal jurisdiction could then participate in an adversarial proceeding where questions or claims of privilege or protection could be raised.  *See* Fed. R. Civ. P. 45(d)(2).

     Plainly stated, the court is concerned that the expedited *ex parte* discovery is a fishing expedition by means of a perversion of the purpose and intent of Fed. R. Civ. P. 23 .

     The motion to expedite discovery [6] is denied.

     Enter this 9th day of March, 2011.

**s/Harold A. Baker**

_____
Harold A. Baker
United States District Judge

---

[1] Identified in the pleadings as a "Montreal based producer of adult entertainment," nothing indicates whether VPR is a *sui juris*  entity.

# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VPR INTERNATIONALE, | ) | |
| | ) | |
| Plaintiff, | ) | 11-2068 |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1 - 1017, individually and as | ) | |
| representatives of a class, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The plaintiff, VPR Internationale, is a Montreal, Quebec-based producer of adult entertainment content.  VPR has filed this complaint against 1,017 Doe defendants identified only by Internet Protocol ("IP") address.  VPR alleges that these defendants have distributed adult videos in violation of VPR's copyrights. To determine the identity of the 1,017 alleged copyright infringers, VPR filed an *ex parte* motion for expedited discovery so that it could immediately serve subpoenas on Internet service providers ("ISPs") to determine the subscriber and location associated with each IP address.  The court denied the motion for expedited discovery [9].  VPR filed an *ex parte* motion for reconsideration, which was denied on March 22, 2011, by text order.

VPR has now filed a motion to certify for interlocutory review the court's denial of its motion for expedited discovery.  VPR seeks certification for one controlling question of law:

Defendants' identifies are unknown to the Plaintiff.  Instead, each Defendant is associated with an Internet Protocol (IP) address.  Internet Service Providers (ISPs) know identity and contact information associated with each IP address.  Is the Plaintiff to entitled to discover this information by serving ISPs with subpoenas *duces tecum* under Fed. R. Civ. P. 45?

Fed. R. Civ. P. 26(d)(1) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  In this case, VPR may seek expedited discovery only by court order.

Arguing in favor of certification, VPR directs the court's attention to its motion for reconsideration.  In its memorandum, VPR concedes that the relief sought falls outside traditional adversarial procedure, and states that there is no legal basis to name the ISP providers as defendants.  VPR compares the Doe defendants' IP addresses to "records of *who* rented *which* car at a busy car rental agency, in that IP addresses are like cars "leased by subscribers. If a

plaintiff was injured by a rental car, the plaintiff can discover the information on who leased the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred.  Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car."  The comparison is not apt.  The rental agency owns the car and is a potential defendant, so the adversarial process would yield the driver's information.  And such information is not necessarily confidential; accident reports and police records may also identify the driver.

In this case, not a single one of the plaintiff's 1,017 potential adversaries has been identified.  There is no adversarial process yet.  Moreover, VPR ignores the fact that IP subscribers are not necessarily copyright infringers.  Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography.  The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid.  Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material.  Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections  (including a secure connection from the State University of New York).  *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

The list of IP addresses attached to VPR's complaint suggests, in at least some instances, a similar disconnect between IP subscriber and copyright infringer.  The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article.  The infringer might be the subscriber, someone in the subscriber's  household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.

VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas.  The potential filing of a motion to quash is no reason to abandon the adversarial process.  As VPR points out, *ex parte* motions for expedited discovery have been granted in similar cases in other districts; among the thousands of Does in those cases, relatively few motions to quash have been filed.  In at least one case, counsel[1] has sought leave to amend the complaint to add more Doe defendants.  *See Lightspeed Media Corp. v. Does 1 - 100*, Case No. 1:10-cv-05604, d/e 16 (N.D. Ill.) (seeking leave to add Does 101 - 1000 as defendants).  In *Hard Drive Productions, Inc. v. Does 1 - 1000*, counsel sought leave to dismiss more than 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff.  *Hard Drive,*

---

[1] VPR is represented by John Steele, Esq.  Steele represents other adult entertainment producers in cases now (or recently) pending in the Northern and Southern Districts of Illinois.

Case No. 1:10-cv-05606, d/e 33 (N.D. Ill.).[2]  Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."[3] Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong?  The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions.  Order, d/e 9.

The motion to certify for interlocutory review [14] is denied.

Entered this 29th day of April, 2011.

**\s\Harold. A. Baker**

_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[2] In *Lightspeed*, only one defendant has been named and his case severed; the ISP subpoenas have been quashed, the other Does are dismissed, and Steele has been ordered to notify the Does that they are no longer potential defendants in the case. *See* Case No. 1:10-cv-05604, d/e 57 (N.D. Ill.).

[3] MSNBC article, p. 2.

3

# EXHIBIT C

E-FILED
Tuesday, 08 March, 2011 12:17:43 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

VPR INTERNATIONALE,

    Plaintiff,

v.

DOES 1 – 1017,

Individually, and as Representatives of a class

    Defendants.

CASE NO. 2:11-cv-2068

Judge:
Magistrate Judge:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff VPR Internationale, through its undersigned counsel, hereby files this Class Action Complaint requesting defendant class certification, damages, and injunctive relief, and alleges as follows:

### NATURE OF THE CASE

1.    Plaintiff files this action for copyright infringement under the United States Copyright Act and a related civil conspiracy claim under the common law to combat the willful and intentional infringement of its creative works.  Defendants, whose names Plaintiff expects to ascertain during discovery, illegally reproduced and distributed Plaintiff's copyrighted Video by acting in concert via the BitTorrent file sharing protocol and, upon information and belief, continue to do the same.  Plaintiff seeks a permanent injunction, statutory or actual damages, an award of costs and attorneys' fees, and other relief.

## THE PARTIES

2.      Plaintiff VPR Internationale ("VPR") is a Montréal, Québec-based producer of adult entertainment content.  Plaintiff is the exclusive owner of the copyrights at issue in this Complaint.

3.      Plaintiff invests substantial capital in producing the content that is being brazenly distributed over the Internet by Defendants and others via the BitTorrent file transfer protocol in complete violation of Plaintiff's copyrights.  The copyrighted works at issue here are some of these adult videos.

4.      Defendants' actual names are unknown to Plaintiff.  Instead, each Defendant is known to Plaintiff only by an Internet Protocol address (hereinafter "IP address"), which is a number that is assigned to devices, such as computers, that are connected to the Internet.  In the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful BitTorrent protocol-based reproduction and distribution occurring over the IP addresses listed on Exhibit A attached hereto.  Plaintiff believes that the Defendants' true identities will be revealed in discovery, at which time Plaintiff will seek leave of the Court to amend this Complaint to identify Defendants and name class representatives.  Further, Plaintiff believes that the information gathered in discovery will allow Plaintiff to identify additional Defendants as members of the class, as infringement monitoring is ongoing.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the copyright infringement claim under 17 U.S.C. §§ 101, *et seq.*, (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights).  This Court has supplemental jurisdiction over the civil conspiracy claim under 28 U.S.C. § 1367(a) because it is so related to Plaintiff's copyright infringement claim,

which is within this Court's original jurisdiction, that the two claims form part of the same case

and controversy under Article III of the United States Constitution.

6.      This Court has personal jurisdiction over the Class because the putative named

class representative Defendants are residents of Illinois.   This Court has *in personam* jurisdiction

over absent class members because due process is satisfied by providing them with best

practicable notice, an opportunity to opt-out, and adequate representation.  This Court also has

personal jurisdiction over non-resident Defendants under the Illinois long-arm statute, 735 ILCS

5/2-209(a)(2), because they downloaded copyrighted content from or uploaded it to Illinois

residents, thus committing a tortious act within the meaning of the statute, and because they

participated in a civil conspiracy to commit copyright infringement with Illinois residents.

7.      Venue is properly founded in this judicial district pursuant to 28 U.S.C.

§§ 1391(b) and 1400(a) because Defendants reside in this District, may be found in this District,

or a substantial part of the events giving rise to the claims in this action occurred within this

District.  Pursuant to CDIL-LR 40.1(F), Plaintiff's basis for filing in the Urbana Division is that

Plaintiff used geolocation technology to trace the IP addresses of multiple Defendants to a point

of origin within Champaign, Illinois.

## BACKGROUND

8.      BitTorrent is a modern file sharing method ("protocol") used for distributing data

via the Internet.

9.      Traditional file transfer protocols involve a central server, which distributes data

directly to individual users.  This method is inefficient: when large numbers of users request data

from the central server, the server can become overburdened and the rate of data transmission

can slow considerably or cease altogether.  In addition, the reliability of access to the data stored

on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

10.     In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data directly to one another.  Under the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

11.     In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers.  The group of peers involved in downloading/distributing a particular file is called a swarm.  A server which stores a list of peers in a swarm is called a tracker.  A computer program that implements the BitTorrent protocol is called a BitTorrent client.  Each swarm is unique to a particular file.

12.     The BitTorrent protocol operates as follows.  First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution.  Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm.  When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

13.     The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast

4

identifying information (i.e. an IP address) before it can receive data.  Nevertheless, the actual

names of peers in a swarm are unknown, as the users are allowed to download and distribute

under the cover of their IP addresses.

14.    The BitTorrent protocol is an extremely popular method for transferring data.

The size of swarms for popular files can reach into the tens of thousands of unique peers.  A

swarm will commonly have peers from many, if not every, state in the United States and several

countries around the world.

15.    The BitTorrent protocol is also an extremely popular method for unlawfully

copying, reproducing, and distributing files in violation of the copyright laws of the United

States.  A broad range of copyrighted albums, audiovisual files, photographs, software, and other

forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

16.    Efforts at combating BitTorrent-based copyright infringement have been stymied

by BitTorrent's decentralized nature.  Because there are no central servers to enjoin from

unlawfully distributing copyrighted content, there is no primary target on which to focus anti-

piracy efforts.  Indeed, the same decentralization that makes the BitTorrent protocol an

extremely robust and efficient means of transferring enormous quantities of data also acts to

insulate it from anti-piracy measures.

## ALLEGATIONS COMMON TO ALL COUNTS

17.    Plaintiff hereby incorporates by reference each and every allegation contained in

the preceding paragraphs as if fully set forth fully herein.

18.    At all times relevant hereto, Plaintiff has been the producer and owner of the

works at issue in this action.

19.    Plaintiff is the owner of all rights, title, and interest in the copyright at issue.

20.     Each of the creative works at issue in this action has an application for registration pending in the United States Copyright Office.

21.      Plaintiff's works are available only via digital download at Plaintiff's online storefront, which contains a copyright notice and a statement that age verification records for all individuals are maintained in accordance with 18 U.S.C. § 2257.  In addition, torrent files used to access the copyrighted material were named in a manner that a simple Internet query of the torrent name would reveal Plaintiff as the producer of the content.

22.     Plaintiff employs proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of BitTorrent-based swarms involved in distributing the copyrighted creative works relevant to Plaintiff's action.  This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct.

23.     Defendants, without Plaintiff's authorization or license, intentionally downloaded torrent files, purposefully loaded the torrent files into BitTorrent clients, entered a BitTorrent swarm particular to Plaintiff's copyrighted creative works, and reproduced and distributed the same to numerous third parties.  A log of IP address identifying each Defendant, as well as the corresponding torrent file swarm/copyrighted work in which Defendant was participating, and the date and time of Defendant's activity is attached as Exhibit A.

### COUNT I – COPYRIGHT INFRINGEMENT

24.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

25.     Defendants' conduct infringes upon Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

26.     Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

27.     Defendants' conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

28.     Plaintiff has been damaged by Defendants' conduct, continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendants' conduct.

29.     Plaintiff hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

30.     As Defendants' infringement was intentional and willful, the Plaintiff is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

**COUNT II – CIVIL CONSPIRACY**

31.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

32.     In using the peer-to-peer BitTorrent file distribution method, each Defendant engaged in a concerted action with other Defendants and yet unnamed individuals to reproduce and distribute Plaintiff's Video by exchanging pieces of the Video file in the torrent swarm.

33.     Each of the Defendants downloaded a torrent file, opened it using a BitTorrent client, and then entered a torrent swarm comprised of other individuals distributing and reproducing Plaintiff's Video.

34.     Participants in the torrent swarm have conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy of the file.

35.     In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by using BitTorrent software to download the Video from and distribute it to others, and were willful participants in this joint activity.

7

36.     As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

38.     Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a) and (b)(3) are met with respect to the class defined below:

**Class Definitions:**

39.     The Class consists of: "All persons, except those with whom settlement has been reached, engaged in distribution activity via the BitTorrent file sharing protocol during the relevant time period (December 10, 2010, until the date the Court enters an order certifying a defendant class) of Plaintiff's copyrighted works associated with the torrent files enumerated in Exhibit A."

40.     (Alternative) Illinois-only sub-class: "All persons residing in Illinois, except those with whom settlement has been reached, engaged in distribution activity via the BitTorrent file sharing protocol during the relevant time period (December 10, 2010, until the date the Court enters an order certifying a defendant class) of Plaintiff's copyrighted works enumerated in Exhibit A."

41.     **Numerosity**.  Plaintiff does not know the exact number of members of the Class because Defendants are operating under the cover of anonymous IP addresses and infringement activity is ongoing.  Due to the nature of the underlying technology involved, however, Plaintiff believes that the Class members number at least in the thousands and are sufficiently numerous

and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

42.    **Commonality**. There are numerous questions of law and fact common to the Class, including but not limited to:

(A) Whether the Plaintiff is the owner of the copyrighted works at issue;

(B) Whether "copying" has occurred within the meaning of the Copyright Act;

(C) Whether entering a torrent swarm constitutes a willful act of infringement; and

(D) Whether and to what extent Plaintiff has been damaged by the Defendant's conduct.

43.    **Typicality**.  Every Defendant engaged in the same conduct: copying and distributing the Plaintiff's owned and copyrighted work.  Although some defenses of noninfringement may be more tailored to an individual, typical defenses common to all and certain to be vigorously asserted by the named Defendants include First Amendment rights to anonymous communication and rights to privacy.

44.    **Adequacy of Representation**.  In the course of this litigation, the Plaintiff or this Court will select appropriate Class representatives who will fairly and adequately protect the interests of the Class.  The Class representatives will be represented by counsel competent and experienced in the defense of copyright and class action litigation.  The identities of Class members can be determined through appropriate discovery.  If no Defendant volunteers to be a Class representative, further discovery regarding ability to represent the Class can be conducted with the permission of this Court.

45.    **Common questions of law or fact predominate and class action is superior method**.  This action satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3).  The common questions of law and fact enumerated above predominate over questions affecting only individual

9

members of the Class.  A class action is the superior method for fair and efficient adjudication of the controversy because:

(A) The interests of members of the class in individually controlling the defense of separate actions are slight when compared to the many benefits of adjudication of the common questions in a class action.  For example, many defendants will benefit from the pooling of expenses that the class action permits by acquiring better representation through class counsel than they otherwise would be able to afford.  In addition, prosecuting separate suits would place great burden upon the Plaintiff and the Court's calendar.

(B) The Plaintiff has not filed other lawsuits against the members of this Class; thus, no other litigation would be delayed or made more burdensome if a class action is maintained.

(C) Infringing activity occurred in every jurisdiction in the United States, including this one; and the Central District of Illinois is a proper forum in which to bring these claims.

(D) Finally, the difficulties likely to be to be encountered in the management of a class action are not significant when weighed against the benefits to the class and to the administration of justice.

## JURY DEMAND

46.    Plaintiff hereby demands a jury trial in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment and relief as follows:

1)    An Order from this Court certifying this action as a class action pursuant to the Federal Rules of Civil Procedure;

2)      Judgment against all Defendants that they have: a) willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

3)      Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be ascertained at trial;

4)      Order of impoundment under 17 U.S.C. §§ 503 & 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendants' possession or under their control;

5)      On Count II, an order that Defendants are jointly and severally liable to the Plaintiff in the full amount of the Judgment on the basis of a common law claim for civil conspiracy to commit copyright infringement; for an award of compensatory damages in favor of the Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial;

6)      Judgment in favor of Plaintiff against the Defendants awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

7)      Judgment in favor of the Plaintiff against the Defendant, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

Respectfully submitted,

VPR Internationale

DATED: March 8, 2011

By:     /s/John Steele
        One of its Attorneys

Jon Rosenstengel # 06216770          John Steele # 6292158
Bonifield & Rosenstengel PC.         Steele Hansmeier PLLC
16 E. Main St.                       161 N. Clark St.
Belleville, IL 62220                 Suite 4700
618-277-7740; Fax 618-277-5155       Chicago, IL 60601
jonrose@icss.net                     312-880-9160; Fax 312-893-5677
                                     jlsteele@wefightpiracy.com
Jerald J. Bonifield # 00251194       *Lead Counsel*
Bonifield & Rosenstengel PC.
16 E. Main St.
Belleville, IL 62220
618-277-7740; Fax 618-277-5155
jerryb1066@yahoo.com


**Attorneys for Plaintiff**

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

VPR INTERNATIONALE,

     Plaintiff,

v.

DOES 1 – 1017,

Individually, and as Representatives of a class

     Defendants.

CASE NO. 2:11-cv-2068-HAB-DGB

Judge: Harold A. Baker
Magistrate Judge: David G. Bernthal

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR LEAVE TO TAKE EXPEDITED DISCOVERY

Plaintiff VPR Internationale, who owns the copyright in the creative works at issue in this case, seeks leave of this Court to serve limited, immediate discovery on third party Internet Service Providers ("ISP") to determine the identities of Doe Defendants.  Plaintiff filed a Class Action Complaint against the Defendants and will be seeking class certification.  The Court should grant this motion because Plaintiff has a demonstrated need for expedited discovery; because *ex parte* relief is proper under the circumstances; and because this discovery is necessary for class certification.

### FACTUAL BACKGROUND

Plaintiff, a producer of adult entertainment content, filed this class action against Doe Defendants.  (See Compl.)  Defendants, without authorization, used an online peer-to-peer ("P2P") media distribution system to download Plaintiff's copyrighted works and distribute Plaintiff's copyrighted works to the public, including by making Plaintiff's copyrighted works available for distribution to others. (Compl. ¶ 23.)  Although Plaintiff does not know the true

names of the Defendants, Plaintiff has identified each Defendant by a unique Internet Protocol

("IP") address which correspond to that Defendant on the date and at the time of that

Defendant's infringing activity.  (Pfister Decl. ¶ 15.)  Additionally, Plaintiff has gathered

evidence of the infringing activities. (*Id.* ¶¶ 12–20.)  Plaintiff has downloaded video files that

each Defendant unlawfully distributed and has confirmed that these files contained Plaintiff's

copyrighted works.  (*Id.* ¶ 19.)  All of this information was gathered by a technician using

procedures designed to ensure that the information gathered about each Doe Defendant was

accurate. (*Id.* ¶ 12.)

   Plaintiff has identified the ISPs that provide Internet access to each Defendant and assign

the unique IP address to the Defendant. (*Id.* ¶¶ 15–17.)  When presented with a Defendant's IP

address and the date and time of the infringing activity, an ISP can identify the name and address

of the Doe Defendant (*i.e.*, the ISP's subscriber) because that information is contained in the

ISP's subscriber activity log files. (*Id.* ¶¶ 21–22.)  ISPs typically keep log files of subscriber

activities for only limited periods of time —sometimes for as little as weeks or even days—

before erasing the data. (*Id.*)

   In addition, some ISPs lease or otherwise allocate certain IP addresses to other unrelated,

intermediary ISPs. (*Id.* ¶ 23.)  Because leasor ISPs have no direct relationship (customer,

contractual, or otherwise) with the end-user, they are unable to identify the Doe Defendants

through reference to their user logs. (*Id.*)  The leasee ISPs, however, should be able to identify

the Doe Defendants by reference to their own user logs and records. (*Id.*)

   Plaintiff continues to monitor infringement of its copyrighted works via the BitTorrent

protocol. (*Id.* ¶ 24.)  The infringement is continuous and ongoing, and is committed by other

parties in addition to Doe Defendants set forth on Exhibit A attached to the Complaint. (*Id.*) Thus, the need for the limited, immediate discovery sought in this *ex parte* motion is critical.

## ARGUMENT

The Court should grant this motion for three reasons. First, Plaintiff has a need for expedited discovery.  Second, *ex parte* relief is proper under the circumstances where there are no known defendants with whom to confer and the discovery request is directed at a third party. Third, discovery of contact information is necessary for class certification.

## I.    THE COURT HAS AUTHORITY TO GRANT *EX PARTE* RELIEF, PLAINTIFF HAS MADE A NECESSARY SHOWING OF NEED FOR EXPEDITED DISCOVERY, AND PLAINTIFF'S REQUEST IS FAIR

The Court has broad authority under the Federal Rules of Civil Procedure to manage the discovery process. *See, e.g.*, Fed. R. Civ. P. 26(d); *id.* 16(b)(3)(B); *id.* 16(c)(2)(F).  Rule 26(d)(1) explicitly permits a party to seek discovery from any source before the parties have conferred when authorized by a court order. *Id.* 26(d)(1).  The courts in this jurisdiction rely on considerations of need and fairness when deciding whether this early discovery is warranted. *Lamar v. Hammel*, No. 08-02-MJR-CJP, 2008 WL 370697, at *3 (S.D. Ill. Feb. 11, 2008). Plaintiff has a need for expedited discovery because physical evidence of infringement will be destroyed with the passage of time; because infringement is ongoing and continuous, necessitating immediate relief; and because this suit cannot proceed without this information.  At the same time, Plaintiff's request does not offend traditional notions of fairness and practicality. Therefore, this Court should grant Plaintiff's motion.

## A.    The Court Has Authority to Grant Plaintiff's Motion

This Court has authority to grant an *ex parte* request for expedited discovery.  Rule 26(d) gives judges broad power to determine the timing and sequence of discovery.  Fed. R. Civ. P. 26(d); *see also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge

with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

The Federal Rules rely on the discretion of trial judges to tailor the scope, manner, and timing of

discovery to the needs of the case and ensure the just, speedy, and inexpensive administration of

justice. *See, e.g.*, Fed. R. Civ. P. 16(b)(3)(B); *id.* 16(c)(2)(F) (setting forth trial court's power to

manage discovery by modifying the timing and extent of discovery through scheduling and case

management orders).  Though this Circuit has not articulated a set test or criteria for deciding

whether early discovery is warranted, this Court in the past has elected to rely on "considerations

of need and fairness."  *Lamar*, 2008 WL 370697, at *3; *see also IRC, LP v. McLean*, No. 09-

189-JPG-CJP, 2009 WL 839043, at *2 (S.D. Ill Mar. 31, 2009) ("Because expedited discovery is

not the norm, the party who seeks such discovery must first demonstrate that there is a need for

such discovery.") (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D.

618, 623 (N.D. Ill. 2000)).  Plaintiff's request meets both of the criteria for need and fairness,

and thus, the Court should grant this motion.

**B.       Plaintiff Has Made a Necessary Showing of Need for Expedited Discovery**

      Plaintiff has a need for expedited discovery of Doe Defendants' identities because

physical evidence of infringement will be destroyed with the passage of time; because

infringement is ongoing and continuous, necessitating immediate relief to prevent irreparable

harm to Plaintiff; and because this suit cannot proceed without this information.

      First, time is of the essence here because ISPs typically retain user activity logs

containing the information sought by Plaintiff for only a limited period of time before erasing the

data. (Pfister Decl. ¶ 22.)  If that information is erased, Plaintiff will have no ability to identify

the Defendants, and thus will be unable to pursue its lawsuit to protect the copyrighted works.

(*Id.*)  Other federal courts did not hesitate to grant motions for expedited discovery under similar

circumstances, where "physical evidence may be consumed or destroyed with the passage of

4

time, thereby disadvantaging one or more parties to the litigation." *See, e.g.*, *Living Scriptures v. Doe(s)*, No. 10-cv-0182-DB, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010) (granting motion for expedited discovery where the information sought by plaintiff was "transitory in nature"); *Interscope Records v. Does 1–14*, No. 07-4107-RD, 2007 WL 2900210, at *1 (D. Kan. Oct. 1, 2007) (granting immediate discovery from ISPs because "the physical evidence of the alleged infringers' identity and incidents of infringement could be destroyed to the disadvantage of plaintiffs"); *Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (granting emergency motion for expedited discovery where "[f]urther passage of time . . . makes discovery . . . unusually difficult or impossible").

Second, because infringement is ongoing and continuous, Plaintiff needs to discover the identities of Doe Defendants to take quick actions to prevent further irreparable harm.  Without a way to contact the Defendants, Plaintiff will continue to suffer ongoing, continuous injury due to Defendants' illegal activities. (Pfister Decl. ¶ 24.)

Third, courts regularly grant expedited discovery where such discovery will "substantially contribute to moving th[e] case forward."  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002); *see also Living Scriptures*, 2010 WL 4687679, at *1 (granting motion for expedited discovery of Doe Defendants because "without such information this case cannot commence").  Here, the present lawsuit simply cannot proceed without discovering the identities of the Defendants.  Although Plaintiff was able to observe Defendants' infringing activity through forensic software, this system does not allow Plaintiff to access Defendants' computers to obtain identifying information.  (Pfister Decl. ¶ 15.) Nor does this software allow Plaintiff to upload a file onto Defendant's computer, to communicate with it,

5

or provide notice of infringement or suit. (*Id.*)  Hence, the Plaintiff needs Defendants' actual

contact information to be able to communicate with them and name them in this lawsuit.

**C.**    **Plaintiff's Request is Both Fair and Practicable**

Finally, discovery of the Defendants' identities does not frustrate notions of fairness and

practicality as contemplated by the Court in *Lamar*, 2008 WL 370697, at *3 (discussing whether

information is readily available and the breadth and specificity of the discovery request as

factors).  The information requested by the Plaintiff is limited to basic contact information of the

Defendants.  The Plaintiff intends to use the information disclosed pursuant to their subpoenas

only for the purpose of protecting their rights under the copyright laws.  The information is

readily obtainable from the ISPs and the disclosure of personally identifying information by the

cable providers was contemplated by Congress nearly three decades ago in the Cable

Communications Policy Act of 1984, Pub. L. 98-549, § 2, 98 Stat. 2794 (codified as amended at

47 U.S.C. § 551 (2001)).  Cable operators may disclose such information when ordered to do so

by a court. § 551(c)(2)(B) (2001).  The Act also requires the ISP to notify each subscriber about

whom disclosure is sought about the subpoena and thus providing them with a notice of a

pending action and an opportunity to appear and object.  *Id.*

In summary, the Court has well-established authority to authorize expedited discovery of

the Doe Defendants' identities based on a showing of need.  Plaintiff has made this showing of

need because evidence of infringement may be destroyed; because Plaintiff is suffering ongoing,

continuous injury from Defendants' infringing activities; and because this information is

necessary for this action to continue.  The discovery of this information is both fair and

practicable because it is readily obtainable from the ISPs and because Defendants will have an

opportunity to appear and object.  For these reasons, the Court should grant Plaintiff's motion for

expedited discovery.

## II.   *EX PARTE* RELIEF IS APPROPRIATE UNDER THE CIRCUMSTANCES

*Ex parte* relief is appropriate under the circumstances where there are no known

defendants with whom to confer.[1]   Courts routinely and virtually universally allow *ex parte*

discovery to identify "Doe" defendants.   *See, e.g.*, *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir.

1980) (reversing and remanding because when "a party is ignorant of defendants' true identity . .

. plaintiff should have been permitted to obtain their identity through limited discovery") (citing

*Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Gordon v. Leeke*, 574 F.2d 1147, 1152–53

(4th Cir. 1978)); *see also Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to

dismiss unnamed defendants given possibility that identity could be ascertained through

discovery) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity

of the alleged defendants [is] not [ ] known prior to the filing of a complaint . . . the plaintiff

should be given an opportunity through discovery to identify the unknown defendants.")); *Dean*

*v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (holding that the district court erred when it

denied the plaintiff's motion to join John Doe Defendant where identity of John Doe could have

been determined through discovery).

Courts across the country have applied the same principles to *ex parte* expedited

discovery in copyright infringement suits that are factually similar, if not identical, to this one.

*See, e.g.*, *Warner Bros. Record Inc. v. Does 1–14*, 555 F. Supp. 2d 1, 1–2 (D.D.C. 2008) (order

granting *ex parte* motion for immediate discovery on an ISP seeking to obtain the identity of

each Doe defendant by serving a Rule 45 subpoena); *Arista Records LLC v. Does 1–7*, No. 3:08-

CV-18(CDL), 2008 WL 542709, at *1 (M.D. Ga. Feb. 25, 2008) (same); *Arista Records LLC v.*

---

[1] In fact, because Plaintiff does not yet know the Doe Defendants' true identities, Plaintiff is
unable not only to confer with them, but also to properly serve them with a copy of this motion.
Instead, Plaintiff will serve the Clerk of Court as authorized by Fed. R. Civ. P. 5(b)(2)(D) ("[I]f
the person has no known address" a paper can be served by "leaving it with the court clerk").

*Does 1–43*, No. 07cv2357-LAB (POR), 2007 WL 4538697, at *1 (S.D. Cal. Dec. 20, 2007) (same); *Warner Bros. Records, Inc. v. Does 1–20*, No. 07-CV-1131, 2007 WL 1655365, at *2 (D. Colo. June 5, 2007) (same).  This Court should follow the well-established precedent from the Seventh Circuit and other federal courts and permit *ex parte* discovery of the Doe Defendants' identities.  As in the cases cited above, the Doe Defendants' identities are not known, but can be discovered through limited discovery.

Further*, ex parte* relief is appropriate because Plaintiff is not requesting an order compelling Defendants to respond to particular discovery, where notice and opportunity to be heard would be of paramount significance to the other party.  Rather, Plaintiff is merely seeking an order authorizing it to commence limited discovery directed towards a third party.  For these reasons, an *ex parte* motion to discover the identities of Doe Defendants is appropriate and the Court should grant Plaintiff's motion.

## III.   DISCOVERY OF CONTACT INFORMATION IS NECESSARY FOR DEFENDANT CLASS CERTIFICATION

Before Plaintiff can move for class certification, discovery must be sufficient to permit the Court to determine whether the requirements of Fed. R. Civ. P. 23 are satisfied.  *Folding Cartons, Inc. v. American Can Co.*, 79 F.R.D. 698, 700 (N.D. Ill. 1978); SDIL-LR 23.1(a).  Consequently, the discovery must be broad enough to give Plaintiff "a realistic opportunity to meet [the certification] requirements." *National Organization for Women, Farmington Chapter v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).  The propriety of class certification cannot be fairly determined without discovery.  *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977); *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

When managing discovery in a class action context, the Court must "balance the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties." *Tracy v. Dean Witter Reynolds, Inc.*, 185 F.R.D. 303, 305 (D. Colo. 1988) (citation omitted). However, it must also protect the defendants against discovery that is irrelevant or invades privileged or confidential areas. *Id.* at 303; *Sperry Rand*, 88 F.R.D. at 277.

In this case, Plaintiff has substantial need for the information and Defendants' privacy interest in the information is minimal and can be properly addressed at a later time. Therefore, the Court should grant this motion.

## A.  Plaintiff Has Substantial Need for Defendants' Contact Information to Certify the Defendant Class

Plaintiff needs Defendants' contact information to certify the defendant class. In particular, contact information is necessary to identify potential class representatives, to determine geographic scope of the class, and to provide mandatory notice to the class under Fed. R. Civ. P. 23(c)(2)(B).

Rule 23(a) authorizes suits against a defendant class. *Id.* 23(a) ("sue or *be sued* as representative parties") (emphasis added). Courts have concluded that, unquestionably, a defendant class may be certified. *Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc.*, 97 F.R.D. 668, 673 (N.D. Ill. 1983); *see also id.* at 674 (collecting cases). But adequacy of representation is a special concern in defendant class actions. *See id.* at 679 ("Because of the serious due process problems which attend the certification of a defendant class, the 23(a)(4) mandate for an adequate representative must be strictly observed."); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1770 (3d ed. 2008) (discussing "special problems" in determining adequacy of representation in defendant class actions). Plaintiff intends to solicit volunteers from the defendant class to serve as willing

9

representatives.  If unsuccessful, Plaintiff will identify potential class representatives and seek

this Court's leave to conduct limited discovery into their ability to serve as representatives to

establish to the satisfaction of this Court that they will vigorously represent the interests of the

class.  But the first step in satisfying Rule 23(a)(4) requires that Plaintiff be able to contact the

Defendants.

Further, considerations of due process as well as the Federal Rules mandate that each

class member in actions for money damages must receive personal notice. *Lemon v.*

*International Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir.

2000); Fed. R. Civ. P. 23(c)(2)(B).  Without the Defendants' contact information, this mandatory

notice is impossible.

**B.  Plaintiff's Need for Contact Information Outweighs Defendants' Privacy Interests**

In class action cases, courts in the Seventh Circuit have determined that the need for the

contact information of the putative class members outweighs the privacy rights of such potential

members.  *See Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008) ("Due

process requires an opportunity to discover this information at the present stage of litigation, and

such due process rights are more compelling than the privacy rights of potential plaintiffs'

addresses and phone numbers."); *Bobkoski v. Board of Educ. of Cary Consol. School Dist. 26*,

No. 90 C 5737, 1992 WL 233965, at *4 (N.D. Ill. Sept. 11, 1992) (permitting discovery of

names, addresses, and telephone numbers in an age discrimination case); *accord Tomanovich v.*

*Glen*, No. IP 01-1247 C Y/K, 2002 WL 1858795, at *4 (S.D. Ind. Aug. 13, 2002) (rejecting

privacy objections to the discovery of personal contact information).

Courts have similarly rejected privacy objections to discovery of personal contact

information in copyright infringement cases, concluding that defendants in these cases have

minimal expectations of privacy.  *See, e.g., Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118–19

(2d Cir. 2010) (concluding that plaintiff's need for discovery of alleged infringer's identity

outweighed defendant's First Amendment right to anonymity); *Sony Music Entertainment Inc. v.*

*Does 1–40*, 326 F.Supp.2d 556, 567 (S.D.N.Y. 2004) ("[D]efendants' First Amendment right to

remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what

appear to be meritorious copyright infringement claims.").  Courts in many jurisdictions have

also rejected challenges to disclosure of personally identifiable information based on privacy

provisions of Family Educational Rights and Privacy Act ("FERPA") where defendants are

students.  *See, e.g., Fonovisa, Inc. v. Does 1–9*, No. 07-1515, 2008 WL 919701, *7–*8 (W.D. Pa.

Apr. 3, 2008) (concluding that 20 U.S.C. § 1232g(b)(2) expressly authorizes disclosure of

"directory information" such as name, address, and phone number; and that a MAC address does

not fall within the purview of FERPA at all); *Arista Records LLC v. Does 1–4*, 589 F. Supp. 2d

151, 153 (D. Conn. 2008) (same); *Arista Records, L.L.C. v. Does 1–11*, 1:07CV2828, 2008 WL

4449444, at *3 (N.D. Ohio Sept. 30, 2008).

     In addition, the courts have held that Internet subscribers do not have an expectation of

privacy in their subscriber information, as they have already conveyed such information to their

Internet Service Providers.  *See, e.g., Guest v. Leis*, 255 F.3d 325, 335–36 (6th Cir. 2001)

("Individuals generally lose a reasonable expectation of privacy in their information once they

reveal it to third parties."); *United States v. Hambrick*, Civ. No. 99-4793, 2000 WL 1062039, at

*4 (4th Cir. Aug. 3, 2000) (a person does not have a privacy interest in the account information

given to the ISP in order to establish an email account); *United States v. Kennedy*, 81 F. Supp. 2d

1103, 1110 (D. Kan. 2000) (defendant's Fourth Amendment rights were not violated when an

ISP turned over his subscriber information, as there is no expectation of privacy in information provided to third parties).

And finally, as one court aptly noted, "if an individual subscriber opens his computer to permit others, through peer-to-peer file-sharing, to download materials from that computer, it is hard to understand just what privacy expectation he or she has after essentially opening the computer to the world." *In re Verizon Internet Services, Inc.*, 257 F. Supp. 2d 244, 267 (D.D.C. 2003), *rev'd on other grounds*, *Recording Indus. Ass'n of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003).

## CONCLUSION

The Court should grant Plaintiff's motion for three reasons. First, Plaintiff has a need for expedited discovery because physical evidence of infringement may be destroyed with the passage of time; because infringement is ongoing and continuous, necessitating immediate relief; and because this suit cannot proceed without this information. Second, *ex parte* relief is proper under the circumstances where there are no known defendants with whom to confer. Third, this discovery is necessary for class certification because the propriety of a class action cannot be determined without it: Plaintiff's need for the information outweighs privacy interests of Defendants. Therefore, Plaintiff respectfully asks the Court to grant this motion and enter an Order substantially in the form of the attached Proposed Order.

[Intentionally left blank]

Respectfully submitted,

VPR Internationale

DATED: March 8, 2011

By:    /s/John Steele
       One of its Attorneys

Jon Rosenstengel # 06216770          John Steele # 6292158
Bonifield & Rosenstengel PC.         Steele Hansmeier PLLC
16 E. Main St.                       161 N. Clark St.
Belleville, IL 62220                 Suite 4700
618-277-7740; Fax 618-277-5155       Chicago, IL 60601
jonrose@icss.net                     312-880-9160; Fax 312-893-5677
                                     jlsteele@wefightpiracy.com
                                     *Lead Counsel*

Jerald J. Bonifield # 00251194
Bonifield & Rosenstengel PC.
16 E. Main St.
Belleville, IL 62220
618-277-7740; Fax 618-277-5155
jerryb1066@yahoo.com

                                     **Attorneys for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

VPR INTERNATIONALE,

    Plaintiff,

v.

DOES 1 – 1017,

Individually, and as Representatives of a class

    Defendants.

CASE NO. 2:11-cv-2068-HAB-DGB

Judge: Harold A. Baker
Magistrate Judge: David G. Bernthal

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE

The Court has reviewed the Complaint with attached Exhibits, Plaintiff's *Ex Parte* Motion for Leave to Take Expedited Discovery and all the papers filed in connection with the motion, and relevant case law.  Accordingly, it is hereby

ORDERED that Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to Rule 26(f) Conference is GRANTED; it is further

ORDERED that Plaintiff may immediately serve Rule 45 subpoenas, which are limited to the following categories of entities and information:

From Internet Service Providers (ISPs) identified in the Exhibit A attached to the Complaint and any other entity identified as a provider of Internet services to one of the Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity monitoring until the class is certified: information sufficient to identify each Defendant, including name, current (and permanent) address, telephone number, e-mail address, and Media Access Control address; it is further

1

ORDERED any information disclosed to the Plaintiff in response to a Rule 45 subpoena

may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in

its Complaint; it is further

ORDERED any entity which receives a subpoena shall meet and confer with Plaintiff

prior to assessing any charge to the Plaintiff in advance of providing the information requested in

the subpoena or for IP addresses which are not controlled by such entity, duplicate IP addresses

that resolve to the same individual, other IP addresses that do not provide the name and other

information requested of a unique individual, or for the entity's internal costs to notify its

customers; it is further

ORDERED that any entity which receives a subpoena and elects to charge for the costs

of production shall provide a billing summary and any cost reports that serve as a basis for such

billing summary and any costs claimed by such entity; it is further

ORDERED that Plaintiff shall serve a copy of this Order along with any subpoenas

issued pursuant to this Order; it is further

ORDERED that if any entity subpoenaed pursuant to this Order wishes to move to quash

the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from

the date of service;

Finally, it is ORDERED that the subpoenaed entity shall preserve any subpoenaed

information pending the resolution of any timely-filed motion to quash.


DATED: _____                    _____

United States District Judge


2

# EXHIBIT E

21, 23, REFER

# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Urbana)
## CIVIL DOCKET FOR CASE #: 2:11-cv-02068-HAB -DGB
### Internal Use Only

VPR Internationale v Does 1-1017
Assigned to: Judge Harold A. Baker
Referred to: Magistrate Judge David G. Bernthal
Demand: $150,000
Cause: 17:101 Copyright Infringement

Date Filed: 03/08/2011
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**VPR Internationale**

represented by **John L Steele**
STEELE HANSMEIER, PLLC
161 N. Clark Street
Suite 4700
Chicago, IL 60601
312-880-9160
Fax: 312-893-5677
Email: jlsteele@wefightpiracy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jerald J Bonifield**
BONIFIELD & ROSENSTENGEL,
P.C.
16 E Main St
Belleville, IL 62220-1602
(618) 277-7740
Fax: (618) 277-7740
Email: jerryb1066@yahoo.com
*ATTORNEY TO BE NOTICED*

**Jon E Rosenstengel**
BONIFIELD & ROSENSTENGEL,
P.C.
16 East Main St
Belleville, IL 62220-1620
(618) 277-7740
Fax: (618 277-5155
Email: jonrose@icss.net
*ATTORNEY TO BE NOTICED*

A TRUE COPY
ATTEST
PAMELA E. ROBINSON, CLERK
BY:
DEPUTY CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
DATE:   6-2-2011

V.

**Defendant**

**Does 1-1017**
*Individually and as Representatives of a*
*class*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/08/2011 | 1 | CLASS ACTION COMPLAINT against Does 1-1017 ( Filing fee $ 350 receipt number 0753-1106890.), filed by VPR INTERNATIONALE. (Attachments: # 1 Exhibit A)(Steele, John) (Additional attachment(s) added on 3/8/2011: # 2 Civil Cover Sheet) (KM, ilcd). Modified on 3/8/2011 (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 2 | CERTIFICATE OF INTEREST pursuant to Local Rule 11.3 by VPR Internationale. (Steele, John) Modified on 3/8/2011 (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 3 | NOTICE of Appearance of Attorney by John L Steele on behalf of VPR Internationale (Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | 4 | NOTICE of Appearance of Attorney by John L Steele on behalf of VPR Internationale (Steele, John) Modified on 3/8/2011 pursuant to text order document is STRICKEN (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 5 | NOTICE of Appearance of Attorney by John L Steele on behalf of VPR Internationale (Steele, John) Modified on 3/8/2011 pursuant to text order document is STRICKEN (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 6 | Ex Parte MOTION to Expedite *Discovery* by Plaintiff VPR Internationale. Responses due by 3/25/2011 (Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | 7 | MEMORANDUM in Support re 6 Ex Parte MOTION to Expedite *Discovery* filed by Plaintiff VPR Internationale. (Attachments: # 1 Exhibit A)(Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | 8 | Proposed Pretrial Order by VPR Internationale. (Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | | TEXT ORDER STRIKING/VACATING DOCUMENT Entered by Judge Harold A. Baker on 3/8/11: John Steele, Esq., has filed a notice of appearance for the other two attorneys whose names appear on the complaint. He cannot file a notice of appearance for other attorneys. The two notices of appearance for other attorneys 4 and 5 are stricken and must be refiled by the attorneys themselves. (KM, ilcd) (Entered: 03/08/2011) |
| 03/09/2011 | 9 | ORDER denying 6 Motion to Expedite Discovery entered by Judge Harold A. Baker on 3/9/11. See written Order. (KM, ilcd) (Entered: 03/09/2011) |
| 03/09/2011 | 10 | ORDER Entered by Judge Harold A. Baker on 3/9/11. Ex mero motu, in this case, the court directs the Clerk of the court to refuse to issue any subpoenas to plaintiff's counsel until further order of the court.(KW, ilcd) (Entered: 03/09/2011) |
| 03/09/2011 | 11 | NOTICE of Appearance of Attorney by Jerald J Bonifield on behalf of VPR |

| | | Internationale (Bonifield, Jerald) (Entered: 03/09/2011) |
|---|---|---|
| 03/09/2011 | 12 | NOTICE of Appearance of Attorney by Jon E Rosenstengel on behalf of VPR Internationale (Rosenstengel, Jon) (Entered: 03/09/2011) |
| 03/11/2011 | 13 | Ex Parte MOTION for Reconsideration re 9 Order on Motion to Expedite by Plaintiff VPR Internationale. Responses due by 3/28/2011 (Attachments: # 1 Exhibit A)(Steele, John) (Entered: 03/11/2011) |
| 03/22/2011 | | TEXT ORDER entered by Judge Harold A. Baker on 3/22/11. The plaintiff has filed an ex parte motion for reconsideration of the Court's denial of the ex parte motion to expedite discovery. The Motion for Reconsideration 13 is denied. (KM, ilcd) (Entered: 03/22/2011) |
| 04/11/2011 | 14 | MOTION Certify Order by Plaintiff VPR Internationale. Responses due by 4/28/2011 (Steele, John) (Entered: 04/11/2011) |
| 04/29/2011 | 15 | ORDER denying 14 Plaintiff's Motion to Certify the Court's 3/9/11 Order for Interlocutory Review entered by Judge Harold A. Baker on 4/29/11. See written Order. (KM, ilcd) (Entered: 04/29/2011) |